OPINION
{¶ 1} Defendant-appellant Duane Walker appeals from his conviction for Aggravated Murder, Aggravated Robbery, Grand Theft, and Receiving Stolen Property. Walker contends that the trial court erred by denying his motion to suppress evidence garnered during a police stop and pat-down. In support, he claims that the police *Page 2 
exceeded the scope of what he appears to concede was a valid stop made pursuant to Terry v. Ohio (1968), 392 U.S. 1. He further contends that the police lacked probable cause to arrest him. Finally, he claims that the trial court erred by considering evidence that the police connected him to a speeding vehicle that ran a red light.
 {¶ 2} We conclude that the trial court did not err in its decision overruling the motion to suppress. The record contains evidence demonstrating that the police had a reasonable articulable suspicion that Walker was involved in a criminal activity that justified his stop and limited detention. We further conclude that the detention was reasonable under the totality of the circumstances, and that any evidence obtained during that detention was voluntarily provided by Walker. We further conclude that the stop was not improperly extended. Finally, we cannot say that the trial court erred by considering evidence regarding the speeding vehicle. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} At noon one day in January, 2007, Dayton Police Officer Edmond Trick was on routine patrol when he heard a radio broadcast issued by the Montgomery County Sheriffs Department. The broadcast indicated that the police were searching for a 1998 blue Chevrolet Lumina, license plate BF46FJ, which was missing from the scene of a homicide.
 {¶ 4} Trick observed a vehicle approaching his cruiser that matched the physical description issued by the Sheriffs Department. As the vehicle passed, Trick observed that the driver was a black male wearing a ball cap and a blue shirt. Trick could not read *Page 3 
the license plate of the vehicle. He made a U-turn to follow the vehicle. Once Trick began to follow the vehicle, he observed that it increased speed to approximately fifty-five miles per hour, and that the vehicle then ran a red light. The vehicle continued into an alley and stopped in a parking lot behind a building located at 1324 North Main Street. Trick was approximately thirty yards away from the vehicle when he saw the driver exit the car and begin running.
 {¶ 5} Trick determined that the license plate on the vehicle matched that provided by the Sheriffs Department. He then began a foot-chase of the vehicle occupant. As he gave chase, Trick broadcast a description of the suspect as a black male, approximately five feet nine inches tall, wearing blue jeans and a blue shirt. Trick lost sight of the person from the vehicle, but encountered a woman who indicated that she had seen a person running north on Main Street.
 {¶ 6} Trick then proceeded on Main before turning onto Bond Street, where he observed a black man wearing a blue shirt and jeans. The man pointed further up the street and informed Trick that he had seen a man "running really fast." Trick continued in the direction the man indicated, but was unable to find that individual.
 {¶ 7} At the same time, Dayton Police Officer Shawn Huey was on routine patrol when he became aware of the original broadcast from the Sheriffs Department, as well as the broadcast from Trick. Huey was several blocks from Trick's location when other crews radioed that they had a seen a person matching the description issued by Trick on Mumma Street. Huey was about two blocks from that location, and within two minutes after Trick's broadcast was able to find the individual on Mumma Street. Huey exited his vehicle and stopped the black male. He then informed the man of the *Page 4 
allegations.
 {¶ 8} The man, later identified as Walker, was very cooperative with Huey. When Huey asked Walker for identification, Walker began pulling items out of his pockets. Walker pulled out more items than he was able to hold. Thus, Huey asked Walker whether he would like to place the items in a bag, and he gave Walker a clear plastic bag. Walker placed the items into the plastic bag and then handed Huey his parole identification. Huey then conducted a pat-down search, but no items or weapons were found. At that point, Walker stated that he had just dropped off his girlfriend at the Plasma Center. Walker stated that the personnel at the Plasma Center would "absolutely" remember him. He also stated that he was not the person for whom the police were searching.
 {¶ 9} In an attempt to verify Walker's story, Huey placed him in the cruiser without handcuffs and drove him to the Plasma Center. As Huey and Walker neared the Center, Walker stated that "maybe" the personnel would not remember him. Huey was unable to find anyone in the Center who recalled seeing Walker. Walker then said that he was supposed to meet a friend at a nearby church; however, when they drove to that location, no one was there. Huey put out a broadcast indicating that he had picked up the man identified by Trick and indicating that Trick needed to identify the individual.
 {¶ 10} Thereafter, Huey transported Walker to Trick's cruiser, where Trick was waiting. They arrived at the scene of the abandoned Lumina within ten minutes of the time Huey first encountered Walker. Trick recognized Walker as the same man who had stated that he had observed a man running fast. Huey than noticed that the clear bag containing Walker's possessions had a credit card in the name of Richard *Page 5 
Krietemeyer. Krietemeyer was the victim of the homicide first broadcast by the Sheriffs Department. The Lumina was identified as being registered to Krietemeyer. Thereafter, Huey provided the bag to the members of the Sheriffs Department who had arrived on the scene. A total of twenty minutes elapsed between the time Walker was detained and the point that the Sheriffs Department arrested him. At no time prior to the arrest was Walker handcuffed.
 {¶ 11} Following further investigation, Walker was indicated on charges of Aggravated Murder, Aggravated Robbery, Grand Theft of a Motor Vehicle, and Receiving Stolen Property. Walker filed two separate motions to suppress evidence. Following a hearing, the trial court overruled the motions, and Walker entered a plea of no contest to all the charges and was sentenced appropriately. From his conviction and sentence, Walker appeals.
 II {¶ 12} Walker's sole assignment of error is as follows:
 {¶ 13} "THE TRIAL COURT ERRED IN FAILING TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS GAINED AGAINST THE APPELLANT IN VIOLATION OF HIS FOURTH,FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AS WELL AS THE COMPARABLE PORTIONS OF THE OHIO CONSTITUTION."
 {¶ 14} Walker contends that the police exceeded the scope of the original stop and indeed held him in custody without probable cause. He further claims that the trial court improperly considered evidence during the motion to suppress. Therefore, he *Page 6 
contends that the trial court erred by failing to grant his motion to suppress.
 {¶ 15} Warrantless searches and seizures "are per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions." Katz v. United States
(1967), 389 U.S. 347, 357. One such exception was established inTerry v. Ohio (1968), 392 U.S. 1, wherein the United States Supreme Court held that under some circumstances police officers may approach an individual in order to investigate possible criminal behavior even though there is not probable cause to arrest. In justifying aTerry stop, the officer "must be able to point to specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant that intrusion." Id. at 21. Once an officer lawfully stops an individual, the officer must be careful not to exceed the scope of the stop's "underlying justification." Florida v.Royer (1983), 460 U.S. 491, 500. Additionally, the length of the stop cannot last "longer than is necessary to effectuate the purpose of the stop." Id.
 {¶ 16} Initially, we note that Walker does not contest Huey's right to have conducted a Terry stop. Walker claims that Huey exceeded the scope of the stop by detaining him after the initial identification and pat-down. In support, he notes that following the pat-down, Huey did not believe that Walker was the individual seen fleeing from the stolen vehicle. Walker contends that Huey converted the stop into a custodial stop without probable cause. We disagree.
 {¶ 17} In this case, Walker was stopped within a few minutes of Trick's broadcast. Huey stopped him because he matched the description of the person sought by Trick. No other individuals matching that description were observed in the vicinity. Despite the fact that Huey thought Walker was not the suspect sought by Trick, the *Page 7 
purpose of the original detention had not concluded at the point that Huey placed Walker into his cruiser. It concluded when Trick was given the opportunity to see Walker. Furthermore, Walker appeared to have consented to driving to the Plasma Center and the church in order to verify the information he provided. However, the information could not be confirmed. The entire detention between the point Walker was stopped and the point that Trick identified him was about ten minutes. Walker was not placed in handcuffs, and he appeared polite and eager to cooperate. Walker did not attempt to leave and did not ask to be released. Once Trick identified Walker, and Huey noticed Krietemeyer's credit cards, Walker was handed over to the Sheriffs Department.
 {¶ 18} Based upon this record, we cannot say that Huey's stop and ten-minute detention of Walker was overly long or that the detention exceeded the scope of the original stop. Therefore, we conclude that the trial court did not err in this regard.
 {¶ 19} Next, Walker contends that the trial court should not have considered that "the driver of the reported stolen vehicle sped up and ran a red light, and the unprovoked flight of the person seen fleeing the reported stolen vehicle," in its consideration of whether Huey exceeded the scope of the Terry stop.
 {¶ 20} We fail to see how this evidence was improperly considered. At the suppression hearing, unlike on appeal, Walker claimed that Huey had no reasonable suspicion to support the initial stop. However, the trial court concluded otherwise. The evidence at the hearing indicated that Trick observed the reported stolen vehicle pass his cruiser and that he observed it speed up and run a red light. The evidence further shows that when Trick pursued the vehicle, it stopped behind some buildings, and that a *Page 8 
man matching Walker's description fled the scene. The trial court determined that this evidence supported a finding that Trick had a reasonable, articulable reason for seeking the investigatory stop of a person matching Walker's description. The trial court further found that it supported Huey's subsequent stop.
 {¶ 21} When ruling on motions to suppress, the trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." State v. Retherford (1994), 93 Ohio App.3d 586, 592. Consequently, when this court reviews suppression decisions, "we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." Id.
 {¶ 22} We conclude that the record contains competent, credible evidence supporting the findings of the trial court. We further conclude that the trial court did not err in overruling Walker's motion to suppress. Therefore, Walker's sole assignment of error is overruled.
 III {¶ 23} Walker's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
 GRADY, J., and DONOVAN, J., concur. *Page 1